IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 2:25-CR-15 |
| v. | ) | |
| | ) | |
| JOHNNY THIEL BANKS, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR A *FRANKS* HEARING

The United States of America, through its attorneys, Erik S. Siebert, United States Attorney, and E. Rebecca Gantt and Megan M. Montoya, Assistant United States Attorneys, hereby submits its response in opposition to the defendant's Motion for a *Franks* Hearing.  ECF No. 39 (Motion for a *Franks* Hearing, hereinafter "Motion").  The defendant's motion is meritless. He seeks the extraordinarily severe remedy of a *Franks* hearing, which is reserved for blatant and intentional law enforcement misconduct, in a barebones six-page motion that raises a purported omission from search warrant affidavits of essentially the defendant's own opinion that the minor victim in this case lacks credibility.  This falls far short of the type of clear misstatement for which *Franks* hearings are reserved.  Not only that, but he bases the motion on the assumption that the detective who signed the affidavits had viewed the victim's forensic interview and reviewed Flock camera license plate data by the time he swore out the warrants.  This assumption is faulty—but even if the detective had reviewed that information and included it, it would not have undermined the affidavits.

Not only does the defendant's motion lack substantive merit, but it is procedurally barred as to the search warrant affidavits for two of three phones.  One of those phones was seized directly

1

from the minor victim, and the defendant clearly lacks standing to challenge that warrant. The other two phones, both iPhones, were seized from the defendant. He lacks standing to challenge the search of one of those iPhones, because he disclaimed it was his, instead asserting it was the minor victim's and that he had only used it to make a call.

For these reasons, the government respectfully submits that the Court should deny the defendant's motion.

## **Background**

The government herein incorporates by reference the procedural and factual background from its opposition to the defendant's motion to sever. *See* ECF No. 42 at 2–22. Additional factual information specifically relevant to the instant motion is incorporated throughout this pleading.

## **Argument**

**1. The defendant lacks standing to challenge the warrant for Jane Doe's phone and the black iPhone.**

The "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection . . . has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *see also United States v. Crittenden*, 716 F. App'x 142, 145–46 (4th Cir. 2017) (addressing Fourth Amendment standing in the context of a *Franks* hearing motion); *United States v. Mastromatteo*, 538 F.3d 535, 537 (6th Cir. 2008) (same). Through his *Franks* hearing motion, the defendant seeks to exclude evidence seized as a result of three phone search warrants, but he lacks standing to raise a Fourth Amendment challenge regarding two of those phones: a white T-Mobile phone seized from Jane Doe, and a black Apple iPhone seized from the defendant.

As to the black Apple iPhone, the government hereby incorporates by reference its arguments regarding the same in its Opposition to the Defendant's Motion to Suppress. As to the

white T-Mobile phone, the defendant cannot assert Fourth Amendment rights on Jane Doe's behalf.  "The Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351 (1967).  Accordingly, Fourth Amendment rights "may not be vicariously asserted."  *United States v. Rumley*, 588 F.3d 202, 206, n.2 (4th Cir.2009) (quoting *Rakas v. Illinois*, 439 U.S. 128 133–34 (1978)).  "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."  *Rakas*, 439 U.S. at 134. "[S]uppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." *Alderman*, 394 U.S. at 171–72.  The defendant bears the burden of showing he has standing by a preponderance of the evidence.  *United States v. Castellanos*, 716 F.3d 828, 832–33 (4th Cir. 2013).

The T-Mobile phone was seized from Jane Doe, who was using the phone when officers first found her.  ECF No. 39-1 at 19.  The defendant has never asserted any property, possessory, or privacy interest in that phone.  *See, e.g.*, ECF No. 50, Ex. 1-1 (noting Jane Doe had two phones, an iPhone and another model phone).  The defendant therefore lacks standing to challenge the search of Jane Doe's phone.  *See, e.g.*, *United States v. Boukamp*, 551 F. Supp. 3d 704, 707 (N.D. Tex. 2021) (holding defendant lacks standing to challenge search of minor victims' property).[1]

### 2.  The defendant fails to satisfy the high bar for a *Franks* hearing.

"An accused is generally not entitled to challenge the veracity of a facially valid search

---

[1] The government does not dispute that the defendant retains standing regarding the blue iPhone seized from the defendant.  Because of damage to that phone, a forensic extraction could not be completed, except for a very limited extract from the phone's SIM card, which information is described in the iCloud search warrant affidavit.  ECF No. 39-2 at 6.

warrant affidavit." *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011). However, "[a] *Franks* hearing provides a criminal defendant with a narrow way to attack the validity of an affidavit." *United States v. Moody*, 931 F.3d 366, 370–71 (4th Cir. 2019). Under *Franks v. Delaware*, 438 U.S. 154 (1974), a defendant may suppress the fruits of such a warrant by demonstrating that the affiant officer made a material misrepresentation in the underlying warrant and by establishing, by a preponderance of the evidence, that the officer included the misrepresentation with the subjective intent to mislead the magistrate, or with a reckless disregard for the truth. 438 U.S. at 155–56.

To even obtain a *Franks* hearing, a defendant must first make a "substantial preliminary showing" that (1) law enforcement made "a false statement"; (2) the false statement was made "knowingly and intentionally, or with reckless disregard for the truth"; and (3) the false statement was "necessary to the finding of probable cause." *United States v. White*, 850 F.3d at 673 (quoting *Franks*, 438 U.S. at 155–56). Given the "presumption of validity with respect to the affidavit supporting the search warrant," *Franks*, 438 U.S. at 171, the defendant must satisfy this "heavy" burden before a hearing takes place. *United States v. Tate*, 524 F.3d 449, 454 (4th Cir. 2008).

As the defendant himself concedes, his "argument concerns an omission," Mot. at 5. This makes his already "heavy burden" under *Franks* even weightier. Where, as here, the defendant relies on allegedly omitted information as opposed to an affirmative false statement, his "burden increases yet more." *Tate*, 524 F.3d at 454. Where there is an alleged omission, the defendant "is required to make a substantial preliminary showing that [Detective Kellogg] omitted material facts that when included would defeat a probable cause showing—*i.e.*, the omission would have to be 'necessary to the finding of probable cause' . . . and that the omission was designed to mislead or was made with reckless disregard of whether it would mislead." *Tate*, 524 F.3d at 455. The defendant fails to meet this threshold requirement; he cannot satisfy any of the requisite factors,

any one of which is fatal to his motion.

First, the defendant cannot show the omission of a material fact that would defeat a probable cause showing. At bottom, his argument regarding a material omission is that Jane Doe's statement in the report of her forensic interview that she "did about 10 plays" before VBPD located her shortly before 11pm is inherently incredible. Mot. at 2. But Detective Kellogg did not even include this allegedly faulty statement in his affidavit (because, as discussed as below, he had not participated in the forensic interview or reviewed a recording of the same). Not being able to point to any false misstatement in the affidavit, the defendant instead argues Detective Kellogg should have instead included an opinion that Jane Doe was incredible because the Flock data showed the Kia had arrived in Virginia Beach four hours prior, around 7pm, a timeline the defendant characterizes as "impossible." Mot. at 3. But as both the Court and the defense is likely aware based on its experience with human trafficking cases, this timeline is not impossible. A common type of commercial sex appointment is a "QV," or quick visit, which is only 15 minutes long. *See* Exhibit 1 (testimony of Detective Ryan regarding the same in prior federal sex trafficking trial). Indeed, Jane Doe states she engaged in precisely such commercial sex appointments. ECF No. 39-4 at 12. Contrary to the defendant's argument, ten such appointments *could* plausibly have occurred in the time between the Kia's arrival at the Virginia Beach oceanfront and VBPD locating Jane Doe in the parking garage. And even if Detective Kellogg should have believed Jane Doe was mistaken about the exact number of commercial sex appointments she engaged in or when she did so, this is a very far cry from the "egregious" informant conduct the Fourth Circuit held the affiant was required to disclose in the principal case it relies on, *United States v. Lull*, 824 F.3d 109, 117 (4th Cir. 2016).

The defendant has utterly failed to show that there was any false omission. Even if he had,

he could not show any such omission was material and undermined the indictment's probable cause. Even if Jane Doe's statement about 10 plays had been included along with the Flock camera data and information about Jane Doe's reports about quick visits, the warrant affidavits would have had more than sufficient probable cause. At bottom, it appears the defendant is relying on his own subjective belief regarding the victim's credibility, despite the substantial corroboration of her statements as described in the government's Opposition to the Motion to Sever. But "the defendant cannot rely on a purely subjective disagreement with how the affidavit characterizes the facts." *Moody*, 931 F.3d at 370.

Second, even if he could show any material omission, the defendant cannot show the requisite subjective intent, that is, that any omission was intentionally deceptive or that Detective Kellogg acted with reckless disregard. The defendant's motion is premised on the assumption that Detective Kellogg had reviewed both the Flock data and Jane Doe's forensic interview before swearing out the phone warrants. This assumption is wrong. Detective Kellogg would be expected to testify that he had not reviewed either the Flock information or a recording of the minor's forensic interview by the time he swore out the challenged warrants. Detective Kellogg swore out the challenged warrants on Monday, August 5, 2024. ECF No. 39-1 at 10, 14, & 18. But he did not participate in the minor's forensic interview, which was held at CHKD on Thursday, August 1, 2024—a fact that the defense well knows as it has a copy of a recording of Jane Doe's forensic interview. *See also* ECF No. 39-4 at 10 (noting an interviewer from the Child Advocacy Center conducted the interview). (A VBPD officer, Detective Savage, accompanied Jane Doe to the interview, but was not permitted in the interview room.) The Flock data was obtained by a member of the VBPD Criminal Intelligence Squad on Friday, August 2, 2024, who copied Detective E. Joseph Ryan on their email to Flock, but not Detective Kellogg. Exhibit 2 (email

correspondence with Flock).

To the extent the defendant would contend that Detective Kellogg should have affirmatively sought out this information, exclusion is inappropriate where "police have been merely negligent in checking or recording the facts relevant to a probable cause determination." *Franks*, 438 U.S. at 170. Reckless disregard "requires a showing that the affiant personally recognized the risk of making the affidavit misleading." *United States v. Pulley*, 987 F.3d 370, 377 (4th Cir. 2021) (citation omitted). While the defendant attempts to impute the knowledge of anyone within VBPD (or at CHKD) to Detective Kellogg, the Fourth Circuit has clearly rejected the application of the collective knowledge doctrine in the *Franks* context. *Pulley*, 987 F.3d at 379 ("The *Franks* inquiry is designed to identify intentionality or reckless disregard on the part of the affiant. An officer who does not personally know information cannot intentionally or recklessly omit it, and therefore the collective knowledge doctrine cannot apply in the *Franks* context.").[2]

## Conclusion

For the reasons stated above, the government respectfully submits that the defendant's motion should be denied.

Respectfully Submitted,

Erik S. Siebert
United States Attorney

---

[2] The defendant also seizes on a statement in the affidavits that both trafficking victims and juveniles can have distorted concepts of timelines as evidence that Detective Kellogg "seemed to have recognized the minor's account was not credible." Mot. at 3. But Detective Kellogg would be expected to testify that this boilerplate language is used by VBPD in similar situations for phone warrants in response to magistrates' past concerns that such warrants should be limited to a narrow timeframe.

By:       /s/

E. Rebecca Gantt
Megan M. Montoya
Assistant United States Attorneys
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office: 757-441-6331
Fax: 757-441-6689
Email: rebecca.gantt@usdoj.gov