IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal No. 2:25-CR-15 |
| v. | ) |
| | ) |
| JOHNNY THIEL BANKS, | ) |
| | ) |
| Defendant. | ) |

POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States of America, through its attorneys, Lindsey Halligan, United States Attorney, and Megan M. Montoya and E. Rebecca Gantt, Assistant United States Attorneys, hereby submits its position with respect to the defendant's sentencing factors. In the Presentence Investigation Report (PSR) prepared in this matter, the United States Probation Office determined the applicable guideline sentence to be a term of life imprisonment, based upon an Offense Level Total of 44 and a Criminal History Category of V. In accordance with Section 6A1.2 of the Sentencing Guidelines Manual and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and has no objections. The defendant has raised six objections which should be overruled for the reasons discussed below.

Based on the nature of the offense, and the defendant's characteristics, the United States respectfully submits that a 40-year term of imprisonment would fulfill the purposes set forth in 18 U.S.C. § 3553(a).

**I.    Background**

On February 5, 2025, Johnny Thiel Banks was named in a six-count Indictment returned by an Eastern District of Virginia, Norfolk Division, Grand Jury. ECF No. 10. Count One charges Banks with Sex Trafficking by Force, Fraud and Coercion, in violation of 18 U.S.C. § 1591(a)(1)

and (b)(1), in or around July 2024. Count Two charges Banks with Sex Trafficking of a Minor, in violation of 18 U.S.C. § 1591(a)(1) and (b)(2), in or around July 2024. Count Three charges Banks with Production of a Visual Depiction of Minor Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2251(a), in or around July 2024.  Count Four charges Banks with Transportation, in violation of 18 U.S.C. § 2421(a), in or around July 2024. Count Five charges Banks with Transportation of a Minor, in violation of 18 U.S.C. § 2423(a), in or around July 2024. Count Six charges Banks with Felon in Possession of Firearm, in violation of 18 U.S.C. § 922(g)(1), in or around July 2024.

On March 21, 2025, Banks pled not guilty to all charges.  ECF No. 20. On July 21, 2025, a jury trial commenced before this Court.  ECF No. 99.  On July 25, 2025, Banks was found guilty by a jury of Counts One through Six of the six-count Indictment.  ECF No. 105. Sentencing was continued pending the completion of a presentence report.

**II.    Objections**

The defendant raises several objections to the PSR, including: 1) the summary of Jane Doe's mother's phone call with the police; 2) that he forced or coerced Jane Doe to engage in prostitution, including through text messages; 3) the summary of Jane Doe's forensic interview; 4) that the defendant testified falsely and therefore obstructed justice; 5) that the defendant exerted undue influence on Jane Doe; and 6) that the defendant possessed a firearm in connection with another felony offense.

The first three objections are factual ones, and the defendant has failed to make the requisite affirmative showing that the information in the PSR is inaccurate.  The last three objections are legal, but the United States' ability to address those objections is limited because it is currently unaware of the bases for those objections.

For the reasons outlined below, each of these objections should be overruled.

### A.) Factual Objections

Objections one, two, and three should be overruled because the defendant has failed to show that any of this information within the factual section is inaccurate. This objection should be overruled absent any affirmative showing of inaccuracy. *See United States v. Manigan*, 592 F.3d 621, 632 (4th Cir. 2010); *United States v. Love*, 134 F.3d 595, 606 (4th Cir. 1998) ("A mere objection to the finding in the presentence report is not sufficient.... Without an affirmative showing the information is inaccurate, the court is free to adopt the findings of the presentence report] without more specific inquiry or explanation." (internal citation and punctuation omitted)). The government need not reprove the facts as shown at trial. Rather, the "defendant has an affirmative duty to make a showing that the information in the presentence report is unreliable, and articulate the reasons why the facts contained therein are untrue or inaccurate." *United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990). As such, the Court can rely on the evidence presented at trial and recited in the PSR at sentencing.

### B.) False Testimony and Obstruction of Justice

The defendant objects to the conclusion that he testified falsely and to the application of the enhancement for obstruction of justice. U.S.S.G. § 3C1.1 sets forth the enhancement's scope:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

The commentary to § 3C1.1 lists many examples of covered conduct of which committing perjury is one. U.S.S.G. § 3C1.1, cmt. n.4. The commentary then notes further that the above list is "non-exhaustive." *Id*. Finally, application note 9 of the commentary enumerates several ways

3

in which a defendant can participate in the obstruction of justice: "[T]he defendant is accountable for the defendant's own conduct and for conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. § 3C1.1, cmt. n. 9. The government bears the burden of proving the facts supporting the enhancement by a preponderance of the evidence. *United States v. O'Brien*, 560 U.S. 218, 224, 130 S.Ct. 2169, 176 L.Ed.2d 979 (2010).

In *United States v. Dunnigan*, the Supreme Court instructed district courts to establish "all of the factual predicates" of perjury when finding obstruction of justice on that basis. 507 U.S. 87, 95, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). Following that language, the Fourth Circuit has reversed sentencing enhancements under § 3C1.1 where the district court failed to find a required factual element of perjury and provided no other basis for the enhancement. *E.g.*, *United States v. Perez*, 661 F.3d 189, 193–94 (4th Cir.2011) (faulting the district court for failing to find willfulness); *United States v. Smith*, 62 F.3d 641, 646–47 (4th Cir.1995) (finding the court below erroneously applied the enhancement without any specific factual findings).

Many of the purposes animating separate prosecutions for perjury also underlie sentencing enhancements for perjurious obstruction. *See Dunnigan*, 507 U.S. at 97–98, 113 S.Ct. 1111. The Supreme Court has underscored this relationship between the obstruction enhancement and prosecution for perjury:

> A sentence enhancement based on perjury does deter false testimony in much the same way as a separate prosecution for perjury. But the enhancement is more than a mere surrogate for a perjury prosecution. It furthers legitimate sentencing goals relating to the principal crime, including the goals of retribution and incapacitation. It is rational for a sentencing authority to conclude that a defendant who commits a crime and then perjures herself in an unlawful attempt to avoid responsibility is more threatening to society and less deserving of leniency than a defendant who does not so defy the trial process.

*Dunnigan*, 507 U.S. at 97, 113 S.Ct. 1111 (citations omitted).

Where the enhancement for obstruction of justice is based on a defendant's perjurious testimony, trial court findings should encompass "the factual predicates" for perjury, namely that the defendant "(1) gave false testimony; (2) concerning a material matter; (3) with willful intent to deceive." *Perez*, 661 F.3d at 192 (quoting *United States v. Jones*, 308 F.3d 425, 428 n. 2 (4th Cir.2002)).

In this case, the defendant elected to testify and made several false statements. For instance, he repeated the lie he told to the police that the purpose of bringing Jane Doe to Virginia was for her to help him paint, and that Jane Doe actually painted and cleaned for him. ECF No. 119 (transcript of defendant's testimony) at 12–14.  He denied using force to bring her to Virginia, contrary to Jane Doe's statements.  *Id.* at 22.  The defendant claimed he thought Jane Doe was an adult, despite numerous text messages showing that to be false.  *Id.* at 15 & 27. Perhaps the most glaring example of his false testimony is that he denied sex-trafficking Jane Doe. *Id.* at 40.  He similarly denied setting up any commercial sex appointments for her at the oceanfront, despite the numerous text messages in evidence showing him communicating with johns for that exact purpose.  *Id.* at 27.

The jury clearly rejected this false testimony and convicted the defendant of all counts less than 24 hours after hearing his version of events.  This enhancement is therefore warranted, because while not every defendant who proceeds to trial falsely testifies, the defendant did, repeatedly.  Applying this enhancement may also discourage future defendants from providing false testimony at trial.

**C.) Undue Influence**

The defendant next objects to the two-level enhancement for "unduly influence a minor to engage in prohibited sexual conduct" pursuant to USSG § 2G1.3(b)(2)(B). Pursuant to Application

5

Note 3B, in a case in which a participant is at least 10 years older than the minor, there shall be a rebuttable presumption that subsection (b)(2)(B) applies. The defendant has failed to identify any factor that would overcome this rebuttable presumption. Furthermore, Jane Doe had a learning disability and was not performing well in school, which made her even more vulnerable to the defendant. Therefore, this objection should be overruled.

### D.) Possession of a Firearm in Connection with Another Felony Offense

Finally, the defendant objects to the six-level enhancement for possessing a firearm "in connection with another felony offense" pursuant to USSG § 2K2.1(b). The defendant does not provide a basis for this objection. In this case, the defendant possessed a firearm while sex-trafficking Jane Doe. As outlined in PSR ¶¶ 7 and 8, the defendant possessed a firearm while sex-trafficking Jane Doe, who was only 15 years old at the time. He has failed to affirmatively show that this information is inaccurate. Therefore, this objection should be overruled.

### III.     Standards Governing Sentencing

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines purely advisory, but emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. *Id.* at 264. The Supreme Court reaffirmed this principle in *United States v. Kimbrough*, 552 U.S. 85 (2007), emphasizing that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Id.* at 90. Finally, in *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court instructed that the sentencing court should calculate the Sentencing Guideline range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors. *Id.* at 49-50. The *Gall* Court

further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* (noting that a "major departure should be supported by a more significant justification than a minor one.").

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they deem appropriate and determine whether the § 3553(a) factors support the sentences requested by the parties; and (3) explain its reasons for selecting a sentence." *United States v. Simmons*, 269 Fed. Appx. 272 at *1 (4th Cir. 2008) (*citing United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007)).

## IV. Position on Sentencing and Argument

Under 18 U.S.C. § 3553(a), when imposing a sentence, the Court should consider (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to promote the goals of sentencing, (4) the kinds of sentences available, (5) the sentencing guideline range, (6) any pertinent policy statement issued by the Sentencing Commission, (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (8) the need to provide restitution to any victims of the offense. For the reasons that follow, the government respectfully submits that a 40-year term of imprisonment is appropriate and reasonable in light of the Section 3553(a) factors.

### A. Nature and Circumstances of the Offense

The nature and circumstances of this offense are egregious and weigh in favor of a lengthy period of incarceration. The evidence at trial established that the defendant, who was

then a 29-year-old, sex-trafficked Jane Doe was she was just 15 years old. Jane Doe's family struggled financially, and the defendant referred to her family as "fucked up" and "poverty stricken." GX 2f-2. Jane Doe was not doing well in school and had just completed the 8th grade when she met the defendant. Her father had also passed away. The defendant exploited Jane Doe's unique vulnerabilities for his own profit.

Then investigation into the defendant began on July 31, 2024, when the Virginia Beach Police Department received a call from Jane Doe's mother that her 15-year-old daughter was a runaway and currently in Virginia Beach, Virginia, with "Johnny." The caller indicated her daughter stated she was with someone who was trying to make her do things that she did not want to do. Officers located Jane Doe in a parking garage, and she identified the defendant as the person who drove her to Virginia Beach, Virginia. They seized Jane Doe's phone from her.

When officers approached the defendant, he provided a false name and false date of birth. He maintained his false name for over one hour. Officers were able to obtain the defendant's actual name by the hotel front desk staff. When the defendant was detained, he had two iPhones on his person. In the defendant's rental vehicle, detectives located a Glock 27 GMBH, .40 caliber semiautomatic pistol in the pocket of a pair of the defendant's red gym shorts. Surveillance footage from the hotel shows the defendant wearing a pair of red gym shorts in and out of the hotel room.

On August 1, 2024, Jane Doe was interviewed by detectives from the Virginia Beach Police Department. She indicated that she had known the defendant for a few months and had ridden with him from Charlotte, North Carolina, to Virginia Beach, Virginia. She stated she engaged in prostitution in the past, but not with Banks. She reported that when she was transported from a house in Charlotte to Virginia Beach by the defendant, he had a firearm.

8

Jane Doe advised that this was not the first time they had been to the Hampton Roads area for commercial sex.

During a forensic interview with Jane Doe, she indicated she came to Virginia Beach the month prior to the instant offense and stayed half a month with the defendant. Jane Doe reported that the defendant wanted her to come back to Virginia, and when she said no, he showed up at the house she was at, and he walked into the house with a gun while children were present. She noted that she came out of the bathroom, pushed him outside away from the kids, and he then pulled her into the car and they then came to Virginia. She indicated they started smoking, and she believes he put something in the drugs because she fell asleep. Jane Doe advised that she met the defendant through a friend whom she used to do "plays" for him. In a later statement, Jane Doe described witnessing the defendant beat up her friend "Scooby."

Jane Doe reported that prior to the police arriving at the hotel, the defendant hit her and strangled her because he kept asking her to do more plays, which is why she called her mother. Jane Doe indicated that their posts were on MegaPersonals, Skip the Games, and Daddy Listcrawlers. She noted that the defendant is "really scary" when he is mad. Jane Doe reported that the defendant took pictures of her, and the images consist of her in "doggy style" poses, in thongs that were pink and blue, and some of her nude.

On August 1, 2024, the defendant was interviewed by detectives from the Virginia Beach Police Department. He reported that he had just met Jane Doe a few days ago around his neighborhood in Charlotte, North Carolina, and that he was in the Virginia Beach area working and painting a house. He stated that he met her at a gas station in Charlotte when she asked him for marijuana. He noted they exchanged numbers, and he denied ever being

9

sexual together. The defendant indicated that he brought Jane Doe with him to help him paint, and he did not know she was underage until the law enforcement officer told him. He noted that he agreed to give Jane Doe $350.00 to help him paint and that he would take her home the following day. The defendant noted that he did not ask her age because he was trying to help her out. He noted that she could confirm, "She's not kidnapped." The detective asked the defendant if Jane Doe had ever spoken to him about prostitution, and the defendant indicated no, but he would not doubt it since that is what goes on in Charlotte. He noted he had never seen Jane Doe with money. The defendant stated he wanted to stop talking due to feeling like he was being criminalized, so this interview ended, and he was transported to the police precinct.

After he was brought to the police precinct, the defendant stated he wanted to clarify some things with detectives. He indicated that Jane Doe was with him when he was pulled over in Suffolk, Virginia, and charged with larceny. When detectives asked the defendant to clarify where he had met Jane Doe, he falsely claimed that he had met her a week or so ago. Detectives asked about the firearm that was located in the vehicle, and the defendant falsely denied that it was his. The defendant also denied having any marijuana in the vehicle. On August 2, 2024, during a recorded jail call, the defendant stated to the caller, "At 9:00 yesterday morning, they got a search warrant for the car and the room, and they found my gun." On August 8, 2024, during another recorded jail call, the defendant stated, "I need a favor. I need a three-way. Man, the police done f****d up my pimping."

Forensic analysis of the phones showed the defendant sex-trafficked Jane Doe during July 2024. When he was trying to get her to go with him to Virginia at the end of July, he sent her texts calling her a "bum," a "bitch," and a "hoe" who was "broke" and "poor." GX 5a-3. He

10

also told her that she "was just a thirsty bitch choosing so I put u to work hoe." *Id*. He also repeatedly threatened her, including on August 1 when he sent her texts stating "u playing with me and my money" and "I'll kill u fr." GX 5a-4.

Jane Doe is not the only person the defendant harmed in the case. The defendant also had Jane Doe's friend Scooby engage in commercial sex and got into a physical fight with her. Jane Doe witnessed the defendant beat Scooby during the conflict.

The defendant's offense conduct warrants a significant period of incarceration.

B.    History and Characteristics of the Defendant

The defendant is a 30-year-old man who was born in New Orleans, Louisiana. PSR ¶ 71. The defendant reported growing up in the projects in New Orleans until he was 7 years old. PSR ¶ No. 75. His father was murdered when he was approximately 7 years old, and he was then raised by his paternal aunt. *Id*. The defendant also reported that his mother died when he was 8 years old. PSR ¶ 71. The defendant reported that from ages 7 to 13, he lived in Mississippi and described the area as "country, quiet." PSR ¶ 75. From the ages of 13 to 22, he reported residing in South Carolina. ECF No. 75. While living with his aunt in South Carolina, he described this area as "a quiet, nice area." *Id*. He also noted that his basic needs were provided for him while living with his aunt. *Id*. He also described experiencing verbal and physical abuse as a child. PSR ¶ 76. In 2021, the defendant moved to Charlotte, North Carolina. PSR ¶ 75.

The defendant was arrested at the age of 17 for careless driving, and a fine and costs were imposed. ECF No. 51. At 18, he was convicted of burglary (non-violent) – second degree. PSR ¶ 53. He was sentenced to a term not to exceed five years. *Id*. While incarcerated, he continued to violate rules. The defendant committed the following disciplinary offenses while

incarcerated: and was "convicted," robbery with force; striking an employee; exhibitionism and public; threatening to inflict harm; disrespect on five occasions; possession of contraband on two occasions; out of place; and using obscene, vulgar, profanity. *Id*. The defendant has also been convicted of failure to stop for blue light; possession of marijuana; unlawful carrying of pistol; driving under suspension; no valid operator's license/suspended out of state; larceny from a person. PSR ¶¶ 53-60. During his most recent offense of larceny from a person, he stole several items from an athletic store, then shoved an employee and threw her phone, which struck her face. PSR ¶ 60. His criminal history and decision to possess a firearm in the instant offense demonstrates his lack of respect for the law and need to be specifically deterred from engaging in criminal conduct.

The defendant reports that he was diagnosed with high blood pressure and that he has never fully recovered from a gunshot wound from 2021. PSR ¶ 81. He also reported receiving mental health treatment "on and off" when he was in middle school and high school. PSR ¶ 84. He has previously been diagnosed with Oppositional Defiant Disorder (ODD), cannabis abuse disorder, and depressive disorder. PSR ¶ 85. He reports that he first used marijuana when he was 13 years old and continued to use marijuana daily until July 2024. PSR ¶ 88. He reported first consuming alcohol at 17 and denied any issue with alcohol abuse. *Id*. He also reported using Percocet and psilocybin mushrooms. *Id*.

    C.    <u>Other Factors to be Considered Under 18 U.S.C. § 3553(a)</u>

Among the other factors a sentencing court is to consider under Section 3553(a), the United States would highlight the need for the sentence imposed in this case to reflect the seriousness of the defendant's offense, afford adequate deterrence to future criminal conduct, provide treatment to the defendant, and avoid unwanted sentencing disparities.

Based on the defendant's threats to Jane Doe, the United States further requests that the Court recommend that the defendant have no contact, directly or indirectly with Jane Doe or her immediate family members, while incarcerated. *See United States v. Santos Diaz*, 66 F.4th 435 (3d Cir. 2023) ("a District Court has the authority to make recommendations to the BOP about [defendant's] conditions of confinement," but does not have "either statutory or inherent authority to impose [a] custodial no-contact order.") 66 F.4th at 441, 447. Furthermore, based on the defendant's multiple violations of probation, the government requests that the Court impose a lengthy period of supervised release.

V.    **Conclusion**

The United States respectfully submits that a sentence of 40-years' imprisonment is sufficient, but not greater than necessary, to fulfill the purposes of Section 3553(a), and asks the Court to impose the same.

Respectfully submitted,

LINDSEY HALLIGAN
UNITED STATES ATTORNEY

By:     /s/
Megan M. Montoya
E. Rebecca Gantt
Assistant United States Attorneys
Attorneys for the United States
United States Attorney's Office
101 W. Main St., Suite 800
Norfolk, VA 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-3205
E-Mail Address: Megan.Montoya@usdoj.gov